IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-CR-140-GKF |
| ) | |
| MICHAEL DEWAYNE BELL, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This matter comes before the court on defendant Michael Dewayne Bell's Motion for Discovery [Doc. No. 204], Motion for Rule #6 Discovery 28 U.S.C. §1651/§2255 [Doc. No. 216] and Request for Writ of Habeas Corpus Ad Testificandum. [Doc. No. 233]. Pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts, defendant seeks an order compelling the United States to produce the following documents, and permitting him to travel to Tulsa to view the following documents:

- Unredacted cell phone records of defendant's United States Cellular Communications of February 28, 2006;

- All unredacted statements of Beverly Koehler on February 28, 2006 and after;

- All unredacted discovery of Rule 11 interviews, plea agreements, grand jury testimony and letters and notes of the AUSA or FBI agents or local detectives pertaining to Michael Lee Curley and Mark Edward Brown;

- All unredacted discovery of every other person that was under investigation by the Tulsa Police Department, FBI or United States Attorney Office;

- The original DVD of the Arvest Bank robbery;

- All the z'redacted [*sic*] discovery of Derrick Leion Williams notes, video tapes audio and visual all confessions verbal and written";

- All unredacted discovery of Kristen Casey's and Ashley Hill's initial statements and any notes and identification of other suspects investigated in the case, as well as Annette Wagner and any of the other tellers or employees at Arvest Bank the day of the robbery;

- To assure that defendant receives all unredacted discovery materials, he asks for "every piece of information that has been instituted in the process of this case dealing with all aspects and eye witnesses that made a statement about identification of the suspect";

- The "marshal's report that shows who attempted (name of marshals and badge number and date the attempt was made) to execute the subpoena to the defense witnesses Beverly Koehler, a writ for Derrick Leion Williams, Janice Carol Marsh, and why the subpoena were not delivered or why wasn't the petitioner informed concerned why the subpoena did not get delivered."

## I.  Background

On August 10, 2006, a grand jury returned an indictment charging defendant with three counts: (1) aggravated bank robbery in violation of 18 U.S.C. §2113(a) and (d); (2) using, brandishing and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §924(c)(1)(A)(ii); and (3) possessing a firearm after a felony conviction in violation of 18 U.S.C. §§922(g)(1) and 924(e). [Doc. No. 2].

The government sought and was granted a protective order prohibiting defendant's attorney from giving copies of the grand jury transcripts or witness statements to the defendant, and allowing the government to redact he names of individuals who might appear in any reports provided as discovery in the case if the names were of individuals currently under investigation or who were not involved in the charges in the case. [Doc. Nos. 33, 38].

During hearings before United States District Judge H. Dale Cook on March 29, 2007 [Doc. No. 74] and April 10, 2007 [Doc. No. 83], defendant stated he did not want his appointed counsel, Michael McGuire, to continue to represent him, and the court allowed him to proceed

on a pro se basis. During the April 10 hearing, McGuire informed the court that he had given defendant a copy of all discovery provided to him with the exception of items subject to the protective order. [Doc. No 172, Transcript at 24]. At a pretrial hearing on April 26, 2007, McGuire again stated that he had provided defendant with all discovery the government had given him, with the exception of grand jury testimony and witness statements covered by te court's protective order. [Doc. No. 174, Transcript at 10-11].

The case was tried from April 30 to May 2, 2007, with defendant representing himself pro se and McGuire serving as standby counsel. The jury returned a guilty verdict on Counts One and Two.[1] The court denied defendant's Motion for Acquittal and Motion for New Trial [Doc. No. 50] and sentenced defendant to life imprisonment pursuant to the "Three Strikes" provision of 18 U.S.C. §3559(d). [Doc. Nos. 155-156]. Defendant appealed and on August 26, 2008, the Tenth Circuit Court of Appeals affirmed his conviction and sentence. [Doc. No. 185]. The Supreme Court denied certiorari on March 30, 2009. [Doc No. 188]. Defendant then filed another Motion for New Trial [Doc. No. 189], which was denied on January 11, 2010. [Doc. No. 199]. Defendant subsequently filed a Motion to Vacate, Set Aside, or Correct Sentence [Doc. 206], as well as several supplements to the motion. [Doc. Nos. 205, 209, 212, 213, 219, 223, 230 and 232]. The motions at issue here seek discovery in connection with his §2255 motion.

## II. Analysis

Unlike a civil litigant in federal court, a habeas petitioner is not entitled to discovery as a

---

[1]At the close of its case, the government advised the court that it had no interstate nexus evidence as to the firearm and that Count Three should be dismissed, and the court granted defendant's motion for judgment of acquittal as to that count.

matter of ordinary course. *Bracy v. Gramley,* 520 U.S. 899, 904 (1997). Rule 6 of the Rules Governing Section 2255 Proceedings provides, in pertinent part:

> (a) A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law. If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. §3006A.
>
> (b) A party requesting discovery must provide reasons for the requests. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

Thus, in order to be permitted to the discovery requested, defendant must show "good cause" and must provide "reasons for the request." "[T]he scope and extent of such discovery is a matter confided to the discretion of the District Court." *Bracy,* 520 U.S. at 909.

## A. Previously Produced Documents

### 1. Cell Phone Records

Bell alleges the requested items would establish that government counsel knew he could corroborate his alibi (that he was at a cemetery in Clearview, Oklahoma at the time of the Arvest Bank robbery) with his cell phone records, which would have supported Catherine Caviness's statement in her 302 forms expressing that she remembered defendant making a cell phone call to his aunt, Janice C. Marsh, asking for directions to the cemetery.[2] Bell contends this information would have led to his acquittal because it would have been physical evidence that contradicted other testimony.

However, Bell already has the cell phone records, a page of which is attached as Exhibit

---

[2]At trial, Caviness did *not* testify that she remembered a call to Janice Marsh. She testified that she accompanied defendant to his grandmother's grave at the Clearview cemetery, but could not remember the date of the visit. [Doc. No. 162, Transcript at 115-120].

4

A to one of his Motions to Supplement his §2255 motion. [Doc. No. 223, Ex. A].  Therefore, this request is denied.

## 2. Unredacted Statements of Beverly Keohler

Defendant seeks copies of unredacted statements of a witness questioned in connection with the robbery, Beverly Koehler.  He claims the government, in violation of *Brady v. Maryland,* 373 U.S. 83 (1963), failed to provide him with information about Koehler, a potential exculpatory witness who originally identified the robber as Derick Williams.

However, Bell already has the statement, as evidenced by the fact that he attached it to the Exhibit List he filed in support of his §2255 motion. [Doc. No. 208, Exhibit List, Ex. W]. Additionally, it is clear from the trial transcript that he knew about Koehler and had her witness statement at the time of the trial.  Bell questioned the chief investigating officer, Corporal Bruce Alexander, of the Tulsa Police Department, as follows:

> Q. (By Bell): Yeah, what led you to go talk to Ms. Couler (*sic*) about her possibly identifying Mr. Williams as a suspect?
>
> A. (By Alexander): At that point we had–I had been looking on the internet–I mean, on the–in our tracer system to see what connection.  Up to this point, Mr. Williams had told me he had information in reference to this bank robbery which he was just trying to get out of jail, all of this was a run around, basically.  So what I was trying to do was tying to confirm or deny it.  I didn't want to go just based on what somebody told me.  I had to have some type of evidence.  So that–after looking at it, I show–saw that Ms. Beverly Couler had had a relationship with Mr. Williams at some point so she would be able to identify or recognize this gentleman if he was the robbery suspect.
>
> Q. Did you take some photographs of the surveillance out to Ms. Couler?
>
> A. Yes, I did.
>
> Q. Did she identify those surveillance photos?

> A.    Not at first.
>
> Q.    Okay.  But at any time did she identify them?
>
> A.    Yes.
>
> Q.    Who did she identify that person to be in the surveillance photos?
>
> A.    She said that it was Derrick Williams.
>
> Q.    Did she sign a witness statement as to that?
>
> A.    Yes.
>
> Mr. Bell:  Your Honor, I move to–first, I would like to have Mr. McGuire take this up to Mr. Alexander to identify that this is the witness statement that Ms. Couler signed.

[Doc. No. 162, Transcript at 90-92].  Clearly, defendant had the witness statement of Koehler during the trial.  Therefore, his request as to the Koehler witness statements is denied.

### 3. Unredacted Discovery Regarding Curley and Brown

Bell claims neither the government nor his standby counsel, Michael McGuire, gave him the unredacted discovery on witnesses Michael Lee Curley and Mark Edward Brown. [Doc. No. 216, p. 2].  The record does not support this claim.  Early in the trial, the government's attorney, Janet Reincke, represented to the court defendant had been given copies of all of the government's exhibits. [Doc. No. 161, Transcript at 34].[3]  Exhibits 9 and 10 were the plea agreements of Mark Brown and Michael Curley, respectively.  Pursuant to the court's protective order [Doc. No. 38], the grand jury testimony and the Rule 11 statement of Curley were not provided to Bell until after the direct testimony of the government's second witness, Annette

---

[3] Defendant admits in his second motion for discovery [Doc. No. 216] that he had Brown's plea agreement.

Wagner. [Doc. No. 161 at 48-49].

### 4. Kristen Casey's Grand Jury Testimony

Kristen Casey, an Arvest Bank employee who at trial identified defendant as the robber, had testified before the grand jury. Her grand jury testimony was provided to defendant after she had testified on direct examination, and a recess was taken by the court to allow the defendant to read that transcript. [*Id.* at 32-33]. Defendant's cross-examination of Casey establishes that he had her written statement and her grand jury testimony.[4]

### 5. Original DVD of Arvest Bank Robbery

The DVD at issue was introduced as an exhibit in the case and viewed by defendant at the same time the jury saw it. Therefore, defendant's request is rejected.

### B. Other Materials

The remaining materials sought by defendant are:

- Letters and notes of the AUSA or FBI agents or local detectives pertaining to Michael Lee Curley and Mark Edward Brown;

- All unredacted discovery of every other person that was under investigation by the Tulsa Police Department, FBI or United States Attorney Office;

- All the redacted [*sic*] discovery of Derrick Leion Williams notes, video tapes, audio and visual all confessions verbal and written;

- To assure that defendant receives all the material of unredacted discovery, he asks for "every piece of information that has been instituted in the process of this case dealing with all aspects and eye witnesses that made a statement about identification of the suspect";

---

[4] During cross-examination, defendant stated to Casey: "I have in my hand the grand jury testimony. Do you recall seeing the facial hair on the suspect?" [*Id.* at 39].

- The marshal's report that shows who attempted (name of marshals and badge number and date the attempt was made) to execute the subpoena to the defense witnesses Beverly Koehler, a writ for Derrick Leion Williams, Janice Carol Marsh, and why the subpoena were not delivered or why wasn't the petitioner informed concerned why the subpoena did not get delivered.

The government contends production of the remaining materials sought by defendant was not required under *Brady*; therefore, defendant is not entitled to production now.

Under *Brady v. Maryland,* 373 U.S. 83, 87 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."   However, there is no general right to discovery in a criminal case, and *Brady* did not create one.  *Weatherford v. Bursey,* 429 U.S. 545, 559 (1977). As the Supreme Court has stated:

> A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files. Although the eye of an advocate may be helpful to a defendant in ferreting out information, this Court has never held–even in the absence of a statute restricting disclosure– that a defendant alone may make the determination as to the materiality of the information.  Settled practice is to the contrary.  In the typical case where a defendant makes only a general request for exculpatory material under *Brady v. Maryland...*, it is the State that decides which information must be disclosed.  Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final. Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance.

*Pennsylvania v. Ritchie,* 480 U.S. 39, 59 (1987) (internal citations omitted).  Further,

> ...[T]here is no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.  The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of a trial, does not establish "materiality" in the constitutional sense.

*United States v. Agurs,* 427 U.S. 97, 109-10 (1976) (internal quotation and citation omitted).

As the court noted, "If everything that might influence a jury must be disclosed, the only way a prosecutor could discharge his constitutional duty would be to allow complete discovery of his files as a matter of routine practice." *Id.* at 109.

Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682 (1985). "[A] constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *Id.* at 678.

Thus, *Brady* does not require a prosecutor to turn over files reflecting leads and ongoing investigations where no exonerating or impeaching evidence has turned up. *Downs v. Hoyt,* 232 F.3d 1031l, 1037 (9th Cir. 2000). A defendant seeking an *in camera* inspection to determine whether files contain Brady material must at least make a plausible showing that the inspection will reveal material evidence; mere speculation is not enough. *Godlock v. Fatkin,* 84 F. Appx. 24, *29 (10th Cir. Dec. 16, 2003) (unpublished opinion). A habeas proceeding is not a fishing expedition. *United States v. Mayes,* 917 F.2d 457, 461 (10th Cir. 1990). "Mere speculation" of some exculpatory material is "unlikely to establish good cause for a discovery request on collateral review." *Strickler v. Greene,* 527 U.S. 263, 286 (1999).

Bell has offered nothing more than rank speculation that had any of these items been disclosed, the result of this trial would have been different. Therefore, he is not entitled to production of the remaining material sought.

### III. Conclusion

For the reasons set forth above, defendant's Motion for Discovery [Doc. No. 204],

9

Motion for Rule #6 Discovery 28 U.S.C. §1651/§2255 [Doc. No. 216] and Request for Writ of

Habeas Corpus Ad Testificandum [Doc. No. 233] are denied.

ENTERED this 21st day of December, 2010.

*Gregory K. Frizzell*
Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma