**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

UNITED STATES OF AMERICA, )
)
        Plaintiff, )
)
v. ) Case No. 06-CR-140-GKF
) Case No. 10-CV-138-GKF
MICHAEL DEWAYNE BELL, )
)
        Defendant. )

## OPINION AND ORDER

This matter comes before the court on Michael Dewayne Bell's Motion to Vacate, Set Aside, or Correct Sentence [Doc. No. 206], filed pursuant to 28 U.S.C. §2255, as supplemented by Doc. Nos. 205,[1] 209, 212, 213, 219, 223, 230 and 232.

### I. Background/Procedural Status

On August 10, 2006, a grand jury returned an indictment charging defendant, Michael Dewayne Bell ("Bell") with three counts: (1) aggravated bank robbery in violation of 18 U.S.C. §2113(a) and (d); (2) using, brandishing and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §924(c)(1)(A)(ii); and (3) possessing a firearm after a felony conviction in violation of 18 U.S.C. §§922(g)(1) and 924(e). [Doc. No. 2]. A warrant was issued for his arrest the same day. [Doc. No. 3]. Defendant was arrested in the Western District of Oklahoma and made an initial appearance before United States Magistrate Judge Robert Bacharach on September 1, 2006. [Doc. No. 7 at 9]. The court, at defendant's insistence, held an

---

[1]Although the "supplement" filed at Doc. No. 205 preceded the §2255 motion at Doc. No. 206, the defendant signed it on March 3, 2010, the same day defendant signed his §2255 motion. This court considers them to be contemporaneous documents and has permitted the filing of the "supplement."

identity hearing after appointing counsel from the Federal Public Defender's Office. [*Id.* at 6]. At a hearing on September 5, 2006, defendant reserved his detention hearing for the Northern District of Oklahoma. [*Id.* at 1].

Defendant made his initial appearance in the Northern District of Oklahoma on November 17, 2006 [Doc. No. 8]. Attorney Frank Lockhart was appointed to represent him under the Criminal Justice Act. [*Id.*]. Lockhart filed a number of motions on defendant's behalf, including a Motion for Severance of Count Three. [Doc. No. 16]. Lockhart filed a Motion to Withdraw as Attorney on December 4, 2006 [Doc. No. 17], stating he had discovered a conflict of interest between his continued representation of defendant and his previous representation of a witness in the case. [*Id.,* ¶2]. The court granted Lockhart's motion and appointed Kevin Adams as Bell's CJA counsel. [Doc. Nos. 24-25].

On February 5, 2007, the grand jury returned a four-count superseding indictment, adding Mark Edward Brown as a co-defendant on Counts One and Two and adding Count Four, which charged Brown with possessing a firearm after a felony conviction. [Doc. No. 43]. On February 26, 2007, the court granted a sealed motion allowing Adams to withdraw from his representation of defendant. [Doc. Nos. 64-65]. On March 2, 2007, Michael McGuire was appointed to represent defendant. [Doc. No. 66].

On March 26, 2007, McGuire filed a Motion to Set Hearing to Determine Representation of Michael Bell [Doc. No. 70], in which he stated that defendant had told him he was no longer his attorney. Subsequently, defendant filed, pro se, a Motion for Severance From Co-Defendant Requesting Separate Trials [Doc. No. 84]. The court conducted a hearing on the motion regarding representation on March 29, 2007. [Doc. No. 74]. During that hearing, defendant

2

stated that he wanted to proceed pro se. [Doc. No. 171 at 29].  After receiving a letter from defendant, the court conducted another hearing to further consider his request to represent himself on April 10, 2007. [Doc. No. 83].  After an extensive inquiry, the court granted plaintiff's request to proceed pro se. [*Id.*].   During the hearing, defendant complained that McGuire had not given him all of the discovery in the case, but McGuire informed the court that he had given defendant a copy of the discovery with the exception of items he was not supposed to have under the protective order. [Doc. No. 172, Transcript at 24-25].  The court appointed McGuire to act as standby counsel for Bell. [*Id.* at 17-18].

Defendant represented himself at a pretrial hearing on April 26, 2007. [Doc. No. 111].  At the hearing, McGuire again stated that he had provided defendant with all discovery the government had given him, with the exception of grand jury testimony and witness statements covered by the court's protective order. [Doc. No. 174, Transcript at 10].  The government asked the court to order defendant to shave and have his hair cut to look the way it did at the time of the robbery. [*Id.* at 12].  Defendant objected, and the court denied the government's request. [*Id.* at 12-16].  The court overruled defendant's Motion to Dismiss [Doc. No. 95].  Defendant agreed that the court had covered his Motion for Discovery [Doc. No. 94] and the court noted that defendant's Motion for Severance [Doc. No. 84] was mooted by Brown's guilty plea. [Doc. No. 174, Transcript at 17].

The case was tried from April 30 to May 2, 2007.  During the trial, the government called two Arvest Bank employees who identified defendant as the robber. [Doc. No. 161, Transcript at 31, 56-59].  Another bank employee, Annette Wagner, testified that the robber pointed a gun at her and told her to hurry up and give him the cash because he didn't want to shoot her. [*Id.* at 46-

47].  Bell's co-defendant, Brown, testified that he and Bell planned the robbery, that they drove separately to Arvest Bank, where he parked across the street and watched Bell go into the bank, that he did not see Bell with a gun that morning, but he saw Bell with a semi-automatic pistol the night before, and Bell told him he had a gun that morning. [*Id.* at 86-87].  He testified that after the robbery, he and Bell got on the highway for Oklahoma City and stopped at a cemetery where Bell had a deceased family member, in order to split the money. [*Id.* at 88].  He believed the cemetery was located in Clearview. [*Id.* at 89].

Michael Curley testified that he introduced Bell to Brown and that Bell told him about a conflict between the two over splitting the proceeds from bank robberies they had done together. [Doc. No. 162, Transcript at 12].   He testified Bell told him that after Brown dropped him off, he robbed the bank and they drove back to Oklahoma City. [*Id.* at 12-13].  The government also called Michael Stokes, a cell mate of Bell at David L. Moss Correctional Center. [*Id.* at 35-40]. Stokes testified that he and Bell became friends, and that Bell told him he had gone into the bank and taken around $3,000 from the bank. [*Id.* at 38].  Stokes testified Bell said after the robbery, he had gone south out of Tulsa towards Okemah because he was "trying to match up an alibi that he was going to use for the time," and that he was going to use a girl named Catherine Caviness for the alibi. [*Id.* at 38-39].

Corporal Bruce Alexander of the Tulsa Police Department testified that an individual named Derrick Williams was originally charged in the Arvest Bank robbery after a witness identified Williams as the individual in surveillance photos, but that those charges were dismissed when he and the assistant district attorney determined that Williams was not the right person. [*Id.* at 54, 58].  He identified a photographic lineup he showed bank employees after the

4

robbery, which included a picture of Williams. [*Id.* at 56].  Bell was not in the lineup and no positive identifications were made from the lineup. [*Id.*].  Bell was pictured in a subsequent lineup and was identified by two bank employees. [Doc. No. 161, Transcript at 36-37, 55]. During cross examination by defendant, Alexander testified that he compared defendant's Department of Corrections photograph to the surveillance photo of the Arvest Bank robber and noticed that both had a small blemish or scar on the chin. [Doc. No. 162, Transcript at 62]. Defendant then asked the court for clippers to shave his facial hair. [*Id.*].  The court reminded defendant he had objected to shaving before trial, and told him he could shave the following day if he wished. [*Id.* at 62-63].  The court stated that it had no shaving equipment available. [*Id.* at 79].  Finally, the court concluded that Alexander's testimony merely compared the surveillance and DOC photographs and therefore, defendant's appearance at the time of trial was not relevant. [*Id.* at 82-83].

At the close of the government's case, it informed the court that it had no interstate nexus evidence as to the firearm and that Count Three should be dismissed. [*Id.* at 67].  The defendant moved for a judgment of acquittal as to all three counts. [*Id.* at 74-75].  The court denied the motion as to Counts One and Two but granted it as to Count Three. [*Id.* at 75].

Defendant recalled Alexander, who acknowledged he had initially identified Derrick Williams as the robber in surveillance video and had interviewed Beverly Koehler, who also identified Williams as the individual in the video. [*Id.* at 90-91].

Defendant called Catherine Caviness as a witness.  Caviness testified that she did not exactly recall February 28, 2006, the date of the Arvest robbery. [*Id.* at 113-114].  She said she remembered accompanying defendant to his grandmother's grave site in early spring, but could

not testify as to the specific date. [*Id.* at 114-115].  She believed the cemetery was in Clearview, Oklahoma. [*Id.* at 118].

Defendant called himself as a witness and asked if McGuire could question him. [*Id.* at 119].  The court denied his request, and required him to ask and answer his own questions. [*Id.* at 121].  He testified that on February 28, 2007, he and Caviness were in Oklahoma City and planned to visit a friend whose birthday was that day. [*Id.* at 122].  The friend was not home, so he and Caviness went to Clearview, where his grandmother was buried. [*Id.* at 123].  Bell testified that while there, he call his aunt (Janice Marsh), who gave him directions to the cemetery. [*Id.*] Bell denied knowing Mark Brown or making any admissions to Michael Stokes. [*Id.* at 123-25].  He admitted his prior convictions, and the government cross-examined him about those convictions.  [*Id.* at 125, 131-132].

During deliberations, the jury asked to see the DVD with the surveillance tape, which had been entered into evidence. [*Id.* at 158].  The court allowed the jury to view the DVD in the courtroom. [*Id.* at 159].  The jury reached a unanimous verdict, finding defendant guilty on Counts One and Two. [*Id.* at 160; Doc. No 128, Verdict].

Defendant filed a pro se motion for judgment of acquittal or new trial. [Doc. No. 132]. He also requested that McGuire be re-appointed as full counsel rather than standby [Doc. No. 135], and the court held a hearing and granted his request. [Doc. No. 139].  McGuire filed a Supplemental Motion for Judgment of Acquittal and for New Trial. [Doc. No. 140-141], and subsequently supplemented the motions. [Doc. Nos. 145-146].

 Defendant's Motion for Acquittal, Motion for a New Trial, and Motion for Judgment of Acquittal were denied on July 11, 2007 [Doc. No. 150], and on July 30, 2007, he was sentenced

to life imprisonment pursuant to the "Three Strikes" provision of 18 U.S.C. §3559(d). [Doc. Nos. 155-156].   Defendant appealed, and on August 26, 2008, the Tenth Circuit Court of Appeals affirmed his conviction and sentence. [Doc. No. 185].   The Supreme Court denied certiorari on March 30, 2009. [Doc. No. 188].   Defendant then filed another  Motion for a New Trial [Doc. No. 189], which was denied on January 11, 2010. [Doc. No. 199].

## II.  Defendant's 28 U.S.C. §2255 Motion

Bell brings the present Motion to Vacate, Set Aside, or Correct Sentence (along with the eight supplements to the motion) filed pursuant to 28 U.S.C. §2255,  Under §2255(a):

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed [1] in violation of the Constitution or laws of the United States, or that [2] the court was without jurisdiction to impose such sentence, or that [3] the sentence was in excess of the maximum authorized by law, [4] or is otherwise subject to collateral  attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Bell asserts he is entitled to the relief sought pursuant to §2255(a) on the grounds that his counsel was ineffective during the post-trial and appeal process, which violated his right to adequate representation as guaranteed by the Sixth Amendment to the Constitution.[2]

Specifically, Bell asserts:

(A)  Counsel was ineffective for failing to challenge the improper joinder of the 922(g)(1) charge with two other counts;

(B)  Counsel was ineffective for failing to object to procedural aspects of his case, including the sealing of the indictment and delay between his arrest and

---

[2]Bell represented himself at trial and therefore cannot argue ineffective assistance of standby counsel during the trial.  *United States v. Dotson*, 28 F. Appx. 801, 803 (10th Cir. Nov. 7, 2001) (unpublished) (Defendant who chooses to represent himself and maintain control of his defense, questioning witnesses and arguing legal issues, cannot succeed on an argument of ineffective assistance of standby counsel).

initial appearance;

(C)  Counsel was ineffective for failing to challenge the government's interference with defendant's attempts to subpoena witnesses;

(D)  Counsel was ineffective for failing to challenge the trial court's refusal to let defendant shave, and the admission of the lineup photo and related testimony;

(E)  Counsel was ineffective for failing to challenge admission of Stokes's testimony;

(F)  Counsel was ineffective for failing to challenge the government's proof that an an actual gun was used in the robbery;

(G)  Counsel refused to give Bell the unredacted discovery, including information about Beverly Koehler;

(H)  Counsel was ineffective for failing to challenge the treatment of Bell's prior robbery convictions for purposes of sentence enhancement under the Three Strikes statute;

(I)  Counsel was ineffective for failing to challenge the trial court's refusal to let stand-by counsel question defendant;

(J) The trial court erred in refusing to allow defendant's standby counsel to question him when he took the stand to testify in his own defense;

(K) Counsel was ineffective for failing to challenge the court's refusal to replace Mr. McGuire as counsel, effectively forcing defendant to proceed pro se; and

(L) Counsel was ineffective for failing to assert Bell's actual innocence.

## II. Standard of Review

To establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984) Bell must demonstrate: (1) that his trial counsel was deficient such that he was deprived of "reasonably effective assistance, " which requires a showing that counsel's representation fell below an  "objective standard of reasonableness"; and (2) that counsel's deficient performance prejudiced his case, meaning that "there is a reasonable probability that,

8

but for counsel's unprofessional errors, the results of the proceeding would have been different." *Id.* at 687-88, 694.

Judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 689. In addressing an ineffectiveness claim, a court "must judge the reasonableness of counsel's challenged conduct," and determine whether, in light of all the circumstances, the acts and omissions identified by the defendant were "outside the wide range of professionally competent assistance." *Id.* at 690. In so doing, the court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment." *Id.*

Where a defendant alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on appeal, the reviewing court examines the merits of the omitted issue. *United States v. Cook,* 45 F.3d 388, 392 (10th Cir. 1995). If the omitted issue is without merit, counsel's failure to raise the issue does not constitute constitutionally ineffective assistance of counsel. *Id.* at 393.

Further, while a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers, it is not the proper function of the court to assume the role of advocate for him. *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). The court is not required to fashion defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual bases. *United States v. Fisher,* 38 F.3d 1144, 1147 (10th Cir. 1994). Thus, conclusory allegations without supporting facts are insufficient to state a claim on which relief can be based. *Hall,* 935 F.2d at 1110.

### III.  Analysis

### A.  Joinder of §922(g)(1) Charge

Defendant has asserted his counsel was ineffective for failing to challenge the joinder of the dismissed §922(g)(1) charge for felon in possession of a firearm (Count Three of the indictment) with the other counts of the indictment.  However, his attorney *did* raise that issue in defendant's Supplement to Motion for Judgment of Acquittal and Motion for New Trial [Doc. Nos. 140-141, pp. 7-9] and also argued the knowledge of defendant's previous convictions prejudiced the jury [*Id.*, pp. 9-10].  He supplemented his argument on the issue in a Second Supplement to Motion for Judgment of Acquittal and Motion for New Trial [Doc. Nos. 145-146, pp. 3-4].

 The trial court considered and rejected his argument both during a pretrial hearing on March 29, 2007 [Doc. No. 171, 3/29/07 Mot. Hrg. Tr. at 26], and in his order denying defendant's Motion for Judgment of Acquittal [Doc. No. 150].   The court, in its denial of defendant's post-trial motion,  found that because defendant voluntarily took the stand in his case-in-chief and admitted the prior convictions listed in Count Three of the indictment  *after* Count Three had been dismissed, he was not unfairly prejudiced by the joinder. [*Id.* at  ll].  The court concluded the issue was without merit. [*Id.*].

The court rejects defendant's allegation of ineffective assistance of counsel with respect to the joinder issue because defendant's counsel raised the issue and because the court previously concluded the issue was without merit.

### B.  Procedural Issues

Defendant alleges his counsel failed to challenge a number of procedural aspects of his case.  He asserts the arrest warrant was invalid because the indictment was under seal at the time he was arrested.  He contends the government violated Rules 4 and 5 of the Federal Rules of Criminal Procedure by not filing a complaint or holding an initial appearance before a magistrate judge.  He argues the delay between his August 31, 2006, arrest in Oklahoma City and his November 17, 2006 initial appearance in the Northern District of Oklahoma violated his due process rights.  He contends the government should have filed a complaint and held a probable cause hearing.

McGuire did not raise these issues in post trial proceedings or on appeal.  However, defendant's arguments regarding procedural issues are meritless.  A Northern District of Oklahoma grand jury returned a sealed indictment against Bell. [Doc. No. 2].  The sealed indictment was the basis of the arrest warrant, as provided in Fed.R.Cr.P. 9.  Therefore, the government was not required to file a complaint.  An indictment is conclusive evidence of probable cause.  *See Gerstein v. Pugh,* 420 U.S. 103, 117, n. 19 (1975).  No violation of Rule 4 occurred.  Additionally, the sealing of indictments is permitted under Rule 6 and, as the court explained to defendant in the March 29, 2007 pretrial hearing, the fact that the indictment was sealed did not render defendant's arrest illegal. [Doc. No.171 at  9].  Nor did any Rule 5 violation occur.  Bell was arrested and immediately brought before a United States Magistrate Judge in the Western District of Oklahoma on September 1, 2006. [Doc. No.7].  Similarly, defendant's due process rights were not violated by the delay between his arrest in Oklahoma City and his initial appearance in the Northern District of Oklahoma on November 17, 2006.

This delay was caused by the intervening filing of a felony complaint against defendant in the Western District of Oklahoma, charging him with resisting arrest and assaulting a federal officer during an attempt by FBI agents to arrest him on August 31, 2006.   [*United States v. Michael Dewayne Bell,* Case No. 06-CR-218-F (W.D. Okla.), Doc. No. 1].  Bell was tried and acquitted on those charges on November 8, 2006. [*Id.,* Doc. Nos. 245-246].

Defendant's due process rights were not violated by any of the alleged procedural violations he has identified.  Thus, his attorney's failure to raise these issues during post trial and appellate proceedings did not amount to ineffective assistance of counsel.

## C.  Witnesses

Defendant alleges his attorney was ineffective because he failed to challenge the government's alleged interference with witness Catherine Caviness and the U.S. Marshal's failure to serve a subpoena on another proposed witness, Janice Marsh.  However, his attorney *did* raise both issues in the Supplement to Motion for Judgment of Acquittal and Motion for New Trial [Doc. Nos.. 140-141, p. 5].  He elaborated on his argument concerning Marsh in his Second Supplement to Motion for Judgment of Acquittal and Motion for New Trial [Doc. Nos. 145-146 at.1-3].  The trial court considered and rejected the arguments in its order denying the Motion for Judgment of Acquittal and Motion for New Trial [Doc. No. 50 at 9-11].  In so ruling, the court found there was no evidence supporting defendant's claim that the FBI threatened Caviness, his girlfriend, with five years imprisonment if she testified that she was with the defendant on February 28, 2006, the day of the bank robbery. [*Id.* at 10-11].[3]  On appeal, defendant's attorney

---

[3]Defendant claimed he visited his grandmother's grave at the Clearview cemetery the day of the robbery and therefore, could *not* have committed the robbery.  Co-defendant Mark Brown, who testified for the government under a plea agreement, testified that after the robbery, the two, driving separately, drove down the Turner Turnpike toward Oklahoma City, exited the turnpike and went

again raised both issues [Brief of Appellant at 57].  The appellate court rejected the arguments, concluding that even if defendant did not waive the issue by not raising it at trial, he failed to make an offer of proof as to why Marsh's testimony would have been favorable and material. *United States v. Bell,* 290 Fed.Appx.. 178, 182, 2008 WL 39016739 (C.A. 10 (Okla.)).  The appellate court noted, "As the district court concluded, this testimony would not have established an alibi for Bell as it fails to prove that Bell was at the cemetery at the time of the robbery."  *Id.* The Tenth Circuit found Bell had offered "nothing more than conclusory allegations" that the government had harassed Caviness and other witness into not cooperating with the defense.  *Id.*

Defendant's allegations about Marsh and Caviness have been previously raised by his attorney, both post trial and on appeal, considered by both the trial court and the appellate court, and rejected by both.  Therefore, the court rejects defendant's argument of ineffective assistance of counsel with respect to these issues.[4]


## D.  Identification Issue

---

to a cemetery in Clearview where a relative of defendant was buried.  Caviness testified at trial that she had visited the Clearview cemetery with defendant, but could not recall the date of the visit. Defendant claimed Marsh would have testified she received a cell phone call from defendant on February 28, 2006, asking for directions to the Clearview cemetery.  The court concluded that even had Marsh testified, her testimony would have been cumulative to Brown's, and would have minimal reference to defendant's whereabouts at the time of the robbery, since a cell phone call can be made from any location. [Doc. No. 150 at 10].  Moreover, the court found defendant, acting as his own attorney, had waived an objection to the lack of Marsh's appearance by not raising the issue or making an offer of proof at trial. [*Id.*].

[4]Defendant has also argued his attorney should have obtained affidavits from Marsh and Caviness. This argument is without merit.  Caviness actually testified at trial and both the trial and appellate court found Marsh's testimony would not have established defendant was at the Clearview cemetery at the time of the bank robbery.

Corporal Bruce Alexander of the Tulsa Police Department, compared a 2003 Department of Corrections photo of defendant to a surveillance photo from the bank robbery to identify defendant as the bank robber.  The individual in both photos had a scar on his chin.  At trial, defendant, who then had a beard, sought permission from the court to shave his beard, claiming he did not have a scar on his chin. [Doc. No. 162, Transcript at 75-85].  The court denied defendant's request.  Defendant contends this denial violated his Fifth and Sixth Amendment rights, and he asserts that his attorney's failure to raise the issue in the motion for new trial constituted ineffective assistance of counsel.

Defendant, representing himself at trial, failed to object to the court's denial of his shaving request.  His attorney did not raise the shaving issue in his Supplement to Motion for Judgment of Acquittal and Motion for New Trial [Doc. Nos. 140-141], but defendant himself raised the issue in his pro se Supplement to Motion for Judgment of Acquittal and Motion for New Trial [Doc. No. 142 at 2-3].

In its order denying the Motion for Judgment of Acquittal and Motion for New Trial, the trial court noted Alexander testified that he identified Michael Bell as the bank robber by comparing the shape of Bell's head, nose, and mouth with that of the still surveillance photo. [Doc. No. 150 at 6].  He testified he verified Bell's general build by contacting the Department of Corrections.  [*Id.*]  In rejecting defendant's argument that he should have been able to show the jury his shaved face, the court stated:

> Defendant Bell also attacks Corporal Alexander's prior statement that he
> identified the robber as Michael Bell because both the surveillance picture
> and the department of corrections photo showed a scar or blemish on the
> chin of the person in the pictures.  Defendant Bell contends that he does
> not have a scar or blemish on his chin, therefore, Corporal Alexander's
> identification of him as the robber is not credible.  It is irrelevant whether

14

> Bell currently has a scar or blemish on his chin, because Corporal Alexander was comparing two photographs, and both photographs were in evidence for the jury to determine whether they showed a blemish on the chin of the person pictured.  Further, Corporal Alexander's testimony was not limited to identifying the bank robber by a scar on his chin.  Corporal Alexander testified that he identified Michael Bell as the bank robber in the surveillance photo be comparing the shape of his head, nose and mouth with that of the 2003 department of corrections photo of Bell.

[*Id.* at. 7].

Defendant's attorney raised the photograph/scar issue in the appellate brief, arguing the court erred in admitting the Department of Corrections photograph and in denying defendant's request for clippers.   [Brief of Appellant at 46-51].  In the brief, counsel acknowledged that Bell himself introduced the challenged Department of Correction photograph during cross-examination of eye witness Kristen Casey and cross-examined Casey and other witnesses about the photo. [*Id.* at 59-62] .

The Tenth Circuit, in rejecting defendant's challenge to the use of the photograph and failure, during trial, to provide a pair of clippers so he could shave his beard, commented:

> A party may not, however, "induce[ ] action by a court and later seek[ ] reversal on the ground that the requested action was error.  Bell cannot claim the use of the photo at trial was in error, it was invited.  Bell also claims the district court's denial of clippers was in error.  He cites no case law supporting the proposition that the district court had an affirmative duty to provide him access to hair clippers.  We therefore conclude that the district court did not err in admitting the photo array or by failing to provide clippers to the defendant.

290 Fed.Appx. 178, 182.

Clearly, defendant's challenge to the use of the photo and the failure to provide him with clippers, was considered both during post trial proceedings and on appeal.  Thus, the court rejects his contention that his attorney provided ineffective assistance on these issues.

### E.  Sixth Amendment Issue

Defendant alleges his attorney was ineffective for failing to challenge the admission of Michael Stokes's testimony.  However, a review of the record clearly establishes that during trial standby counsel for  the defendant, with the court's permission, presented defendant's objection to Stokes's testimony. [Doc. No. 33, Transcript at 32-35].  Counsel argued Stokes had been placed in the same cell as defendant to elicit statements from him after defendant was under indictment and represented by counsel, in violation of defendant's Fifth and Sixth Amendment right to counsel. [*Id.*].  The Assistant U.S. Attorney responded that the government had not placed Stokes in the cell.  Stokes contacted the government voluntarily after the conversation and told them defendant had admitted the robbery.  Stokes told the government he was concerned because defendant was making threats against other people. [*Id.*].  The court overruled defendant's objections (articulated by McGuire), on the basis that Stokes was going to testify about what he was told prior to having any contact with the government. [*Id.* at 35].   During post-trial proceedings, the court again rejected defendant's contention that Stokes had been a government "plant," commenting:

> There is no evidence that the government invited Mr. Stokes to interrogate defendant Bell, or that he was a "plant."  The evidence is that Mr. Stokes voluntarily contacted his counsel and requested an opportunity to speak to the government regarding Bell's confession.  Further, there is no evidence that the government encouraged Mr. Stokes to obtain additional information after his initial interview with the government.

 [Doc. No. 150 at 8].  In the appellate brief, counsel for defendant devoted more than six pages to argument that  the admission of Stokes's testimony was prejudicial error, violating defendant's Sixth Amendment right to counsel. [Brief of Appellant, pp.51-57].  The Tenth Circuit concluded defendant had presented no evidence that Stokes was a government agent and to the contrary,

"the only testimony at trial established that Stokes sought out the government *after* Bell had confessed to him."  290 Fed.App. at 183.  Therefore, it found no Sixth Amendment violation had occurred.  *Id.*

The court rejects defendant's assertion that McGuire provided ineffective assistance of counsel in objecting to Stokes's testimony.

### G.  Section 924(c) Issue

Defendant asserts McGuire was ineffective because he did not challenge the government's failure to produce the actual gun he was alleged to have used during the robbery in connection with the 18 U.S.C. §924(c) charge of possession of a firearm in the commission of a crime.  Initially, the court observes that the premise of this argument is legally incorrect. Under Tenth Circuit law, in a §924(d) prosecution, the government is not required to introduce the actual firearm into evidence; rather, "credible witness testimony is sufficient to establish that a defendant possessed a firearm during the commission of a crime."  *United States v. Floyd,* 81 F.3d 1517, 1526 (10th Cir. 1996).  On appeal, counsel  argued the evidence was insufficient to support conviction on the firearms charge.  [Brief of Appellant at 70-75].  The Tenth Circuit, however, rejected this argument, stating:

> Related to the firearm charge, the surveillance video clearly shows the robber carrying a firearm.  Moreover, two eyewitnesses testified that they saw the robber with a firearm and Brown testified that Bell stated he was in the possession of a firearm prior to the robbery.

290 Fed.Appx. at 181.   Defendant's argument that his attorney was ineffective in failing to challenge the government's failure to produce the weapon is without merit.

### H. Government's Failure to Turn Over Unredacted Discovery

Defendant complains his attorney was ineffective because he failed to raise post trial or on appeal the government's failure to turn over unredacted discovery. The court has previously found in its order denying defendant's Motion for Discovery, Motion for Rule #6 Discovery 28 U.S.C. §165/§2255 and Request for Writ of Habeas Corpus Ad Testificandum [Doc. No. 260], that the government did *not* fail to turn over unredacted discovery it was required to produce. Therefore, the court rejects defendant's contention that his attorney was ineffective in this respect.

## I.  Sentencing Issue

Defendant contends McGuire was ineffective because he did not challenge, on appeal, the imposition of a life sentence based on defendant's prior convictions. However, it is clear from the Brief of Appellant that the attorney argued this point strenuously and at length. [Brief of Appellant at 43-51.]. The attorney asserted defendant should not have been categorized as a career offender because his prior conviction for riot is not a "serious violent offense," and thus the predicate for application of 18 U.S.C. §3559(c)(1) had not been met. [*Id.* at 46-49]. Further, he argued that two prior convictions for robbery should have been counted as one because the sentences for the crimes were consolidated to run concurrently and accordingly, should have been considered as a single sentence. [*Id.* at 49-50]. Defendant's attorney also asserted the life sentence under 18 U.S.C. §3559(c)(1) violated the Eighth Amendment ban on cruel and unusual punishment. [*Id.* at78-80].

The Tenth Circuit considered and rejected these arguments. It found that two previous robbery convictions were for separate robberies and were properly considered separate crimes

even if the sentences ran concurrently,[5] and the imposition of a life sentence was not "grossly disproportionate to his crime or that his case was "exceedingly rare" or "extreme."  290 Fed.Appx. at 184-85.

Defendant's argument on this issue lacks merit.

## J.  Questioning by Standby Counsel

During the trial, the court denied defendant's request that his stand-by attorney be permitted to question him when he took the stand in his own defense. [Doc. No. 162, Transcript at 119-121].   Defendant now contends the trial court's refusal to allow his stand-by counsel to question him violated his due process rights.  Defendant cites no authority, and the court has found none, supporting his argument that he was entitled to have stand-by counsel question him. Further, a review of the record demonstrates that defendant testified at length, and the objections sustained by the court (primarily on the basis that the testimony was irrelevant or improper opinion or character evidence) were proper objections.   [*Id.,* pp.l21-132].

The court rejects defendant's argument that his due process rights were violated when the court did not permit stand-by counsel to question him on the stand.

## K.  Self-Representation

Bell contends his attorney was ineffective for failing to argue he was forced to proceed pro se against his wishes by the court's refusal to replace his attorney.

A criminal defendant has the right to waive counsel and conduct his own defense in his criminal case.  *United States v. Taylor,* 113 F.3d 1136, 1140 (10th Cir. 1997) (*"Taylor I"*).  In

_____

[5]Because defendant's two prior felony robber convictions were sufficient to sustain a life sentence, the Tenth Circuit declined to address his arguments regarding the riot conviction.  290 Fed.Appx. at 184.

determining if a defendant waived his right to counsel, the court must conduct a two-part inquiry to determine whether he (1) voluntarily waived his right to counsel, and (2) knowingly and intelligently waived that right. *Id.*

A defendant's waiver is involuntary if he is forced to choose between incompetent counsel or appearing *pro se*. *Id.* at 1140. However, if a defendant's counsel is competent and defendant cannot establish good cause entitling him to appointment of new counsel, his waiver will be deemed voluntary. *Id.*

In determining whether a defendant knowingly and intelligently waived his right to counsel, the court must consider the record and entire circumstances of the case, including the defendant's age and education, his previous experience with criminal trials, and his background, experience and conduct. *Id.* Waiver must be made with an apprehension of the nature of the charges, the statutory offenses, the range of allowable punishment, possible defenses to the charges, circumstances in mitigation and all other facts essential to a broad understanding of he whole matter. *United States v. Padilla,* 319 F.2d 952, 956-57 (10th Cir. 1987). "The trial court must make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of *all the circumstances under which such a plea is tendered.*" *United States v. Taylor,* 183 F.3d 1199, 1203 (10th Cir. 1999) (*"Taylor II"*).

Defendant had two other attorneys before McGuire was appointed to represent him on March 2, 2007. [Doc. No. 66]. On March 26, 2007, McGuire fled a Motion to Set Hearing to Determine Representation of Michael Bell. [Doc. No. 70]. In the motion, McGuire stated that defendant Bell had informed  him on March 25, 2007, that McGuire would no longer represent

Bell. [*Id.,* ¶12].  The court conducted a hearing on the motion on March 29, 2007. [Doc. No. 171].  During the hearing, defendant complained about McGuire's representation and stated he wanted to proceed pro se, and that he would no longer recognize McGuire as his attorney. [*Id.*].  Defendant acknowledged that McGuire was the third attorney appointed to represent him in the case, and that he had asked that the second attorney be removed because he was ineffective. [*Id.* at 7]   Defendant told the court that his family wanted to hire another attorney to represent him. [*Id.,* pp. 12-13].  The court told him that if another attorney entered an appearance, the court would address the issue. [*Id.* at 13].  Defendant voiced a number of complaints about the way McGuire was handling his case, including that McGuire had not made any attempt "to sever the case." [*Id.* at 7-8].  The court advised him that it was clear from his complaints that he did not understand judicial proceedings, [*Id.,* p. 9], and explained why his complaints were without basis. [*Id.,* pp.9-12].  The court explained to defendant that there were different types of severance, and that to the extent defendant sought to sever Count Three from the remaining counts of the indictment, such a motion would be without merit, but a motion to sever his trial from that of the co-defendant would require briefing. [*Id.* at 26].  The court told defendant McGuire was "one of the finest lawyers in this area." [*Id.* at 17].  Defendant insisted he would prefer to represent himself rather than have McGuire as his attorney.  [*Id.* at 26-29].   The court told him McGuire would continue to be available as standby counsel. [*Id.* at 28-29].

Subsequently, on April 10, 2007, the court conducted another hearing on plaintiff's request to proceed pro se. [Doc. No. 83].  In that hearing, the court fully apprised defendant of the charges against him and the potential sentences they carried. [Doc. No. 172, Transcript at 2-7].  Defendant was told that if he chose to represent himself, the court could not tell him or

advise him how to try the case. [*Id.* at 7].  The court explained to defendant that if he represented himself, he would need to follow the Federal Rules of Evidence and the Federal Rules of Criminal Procedure, and the judge quizzed him about his familiarity with these rules. [*Id.* at 8-9]. Defendant was advised that a trained attorney would defend him in a far better manner than he could defend himself, and was urged not to represent himself. [*Id.* at 9].  Bell complained that McGuire would not listen to his ideas about the case, and "nobody has stood up for me and represented me in this case." [*Id.* at 13].  The court responded:

> Your attorney is the one who understands representation, you don't....And if you're going to be represented, a lawyer has to represent somebody in the appropriate, ethical and proper manner.  It's one thing to tell your attorney what your ideas are, it's another thing to demand they do it.  Because there are times and again when individuals wish things or believe something is appropriate when it is not.  And I would certainly expect Mr. McGuire or any other lawyer to listen to you, but I would not expect that if they find it improper to do anything on it.  And I have every confidence that's the manner in which Mr. McGuire would operate as I would expect every attorney to so operate.

[*Id.* at 14].

The court repeatedly advised defendant he had two choices–either to proceed with McGuire as his attorney, or to proceed pro se. [*Id.* at 25, 30-31].  After a lengthy exchange with the court, defendant was asked whether it was his desire to voluntarily represent himself pro se, and he answered affirmatively. . [*Id.* at 33-34].  Based on his response, the court found defendant should be permitted to proceed pro se.  [*Id.*].

Having reviewed the transcripts, the court concludes that defendant's attorney, McGuire, was competent and defendant's primary complaint was that he would not file certain motions defendant wanted him to take and–as the court explained to defendant–his complaints demonstrated his lack of understanding about the judicial system and criminal procedure. Thus,

22

the court finds defendant voluntarily waived his right to counsel.  *See Taylor I,* 113 F.3d at 1140.

The court further concludes that the court conducted a penetrating and comprehensive

examination of the circumstances surrounding defendant's request, and properly concluded

defendant's waiver was made knowingly and intelligently.  *See Taylor I,* 113 F.2d at 1140;

*Padilla,* 319 F.2d at 956-57.  Defendant was repeatedly warned about the risks of proceeding pro

se and advised that he would be better served by proceeding with an attorney.  He was apprised

of the charges and potential sentences including the Three Strike Rule.

Defendant's assertion that McGuire provided ineffective assistance by failing to raise his

pro se representation of himself during trial as a grounds for reversal is without merit.

## L.  Actual Innocence

Defendant contends his attorney was ineffective for failing to raise a claim of actual

innocence in post-trial motions and on direct appeal. [Doc. No. 230].  This contention is

unfounded.  In both the post-trial Motion for Acquittal and Motion for New Trial and the

Appeal, McGuire argued strenuously that the evidence was not sufficient to support defendant's

conviction.  In particular, the attorney argued that the early mistaken identity of Derrick

Williams as the robber and the alleged establishment by defendant of an alibi controverted the

convictions.  Both the trial court and the appellate court rejected these arguments.  Thus, defense

counsel was *not* ineffective in this respect, and no prejudice occurred, because the trial and

appellate courts considered and rejected defendant's arguments.

## IV.  Conclusion

Defendant has failed to demonstrate that his attorney performed below an objective standard of reasonableness or that he was prejudiced by the alleged deficiencies in the attorney's performance.  Therefore, his Motion to Vacate, Set Aside, or Correct Sentence [Doc. No. 206], filed pursuant to 28 U.S.C. §2255 pursuant to 28 U.S.C. §2255, as supplemented by Doc. Nos. 205, 209, 212, 213, 219, 223, 230 and 232, is denied.

ENTERED this 22nd day of December, 2010.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma